BENJAMIN A. BUCK *vs.* MICHAEL DOYLE.—*December* 1846.

The doctrine of *caveat emptor*, does not apply to brokers dealing in bank notes of the other States. Both parties being equally innocent in such a transaction, having equal means of knowledge, and the usage being, that the purchaser may rely upon the skill of the vendor in detecting counterfeits, the former may recover from the latter the sum paid him for such paper, it proving to be forged.

The purchaser may lose his right of recovery by laches.

But where the purchaser has parted with such paper, *bona fide*, and for value, and knows nothing of the forgery, he is not guilty of laches, if, on claim being made of him, he refunds his vendee, and thereupon tenders the forged paper to his vendor, and requires him to refund.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit*, brought to September term 1844, by consent of parties, by the appellant against the appellee. The cause was heard upon the general issue. The jury found a verdict for the plaintiff, under the instructions of the county court, for $208.26.

Upon the trial of this cause, the plaintiff offered in evidence, by *Upton Buck*, that he was a clerk in the exchange and broker's office of the plaintiff during 1844; that on the 24th May 1844, at about half-past eight o'clock, A. M., a youth, who was then a clerk in the office of the defendant, who was at that time, and still is, an exchange broker, and which said clerk was known to the plaintiff at that time to be a clerk in the office of the defendant, called at the office of the plaintiff with five notes, purporting to be notes of the *Planter's Bank*

*of Tennessee,* each of the denomination of one hundred dollars, and asked the plaintiff, at what rate he would discount said notes? that said plaintiff informed said clerk of the defendant, that he would discount them at three per cent.; upon which the said clerk of the defendant remarked, that *Mr. Harris,* another broker, had offered to discount said notes at two and-a-half per cent., and give his check for the amount less said discount, but that offer was declined, because *Mr. Doyle,* the defendant, wanted the money for a person about to leave town in the nine o'clock cars, and that a check would not answer, as *Mr. Doyle,* the defendant, wanted the money; that the plaintiff, upon receiving this information, agreed to discount said notes at two and-a-half per cent., and paid to said clerk of the defendant, in *Baltimore* bank notes, the amount of said notes, less the discount aforesaid. That the plaintiff did not particularly examine said notes, for the purpose of ascertaining whether they were counterfeit or not, because he was informed by the clerk of the defendant, that they came from the office of the defendant, who was known to the plaintiff to be a regular broker, and *that it is not usual among brokers, to inspect notes which they receive from each other, as closely as if they were received from a stranger, because they all suppose each other to be equally good judges of notes; and take it for granted, that if spurious notes are even received by one from another, that the mistake will be corrected, and that such is the usage among brokers in the city of Baltimore;* but, that if the plaintiff had examined said notes closely, with a view to determine whether they were genuine, he might and probably would, have discovered, that said notes were counterfeit.

The plaintiff further proved by said witness, that the said five notes were placed in the money-tray of the plaintiff, and there remained for a short time, when they were all passed by the plaintiff to a certain *Joseph E. Husbands,* under a special agreement; and further proved by said witness, that the five notes now shewn to him, purporting to be notes of the *Planter's Bank of Tennessee,* each of the denomination of one hundred dollars, are all counterfeit.

The plaintiff further offered in evidence, by *Joseph E. Husbands*, a competent witness, that he is by profession an exchange broker; that in the latter part of May 1844, he purchased from the plaintiff five notes, purporting to be notes of the *Planter's Bank of Tennessee*, each, &c.; that he obtained the said notes from the plaintiff, upon a special agreement, which was, that said witness should pay said plaintiff the amount, less one per cent. discount, of so much of said five notes, as said witness would be able to dispose of in the western country, whither he was going to buy produce; and that so much of said five notes as remained undisposed of by said witness, the plaintiff was to receive from him, upon his return to *Baltimore*, at one and-a-half per cent. discount; the account between witness and the plaintiff, to be settled upon the return of witness to *Baltimore*.     That the witness went to the city of *Pittsburg*, and there sold three of said notes so received from the plaintiff, to a certain *William Larimer*, a broker in said last mentioned city; and not being able to dispose of the other two of said five notes, returned them to the plaintiff, in pursuance of their contract aforesaid; that at the time he received said notes of said plaintiff, and also at the time he returned the two, aforesaid, to the plaintiff, the said witness, nor the plaintiff, as the said witness believes, had no suspicion that any of said notes were counterfeit; that he did not examine them with any attention when he received them, or he would have discovered the forgery; and that the only notes the said witness had in his possession of, or purporting to be notes of, &c., upon his said trip to *P.*, were the said five notes which he received of the plaintiff, as aforesaid.     That shortly after the return of said witness from *P.*, he was informed by the plaintiff, that he was fearful there was something wrong about said two notes; that a man had been arrested for passing counterfeit notes upon the *Planter's Bank of Tennessee;* and that said witness and the plaintiff having discovered the two notes, then in the possession of the plaintiff, to be counterfeit, went before *Mr. Miltenberger*, a justice of the peace of *Baltimore*, and made the affidavits annexed to the two notes marked A and B, &c.

That witness is not able to identify said two notes as the same which he returned to the plaintiff, upon his return from *Pittsburg*, as aforesaid, because he put no mark upon said two notes; and the plaintiff further gave in evidence, by the last mentioned witness, that the first information he had, and, to the best of his belief, that the plaintiff had, that the three of said notes which witness passed off in *P.*, were counterfeit, was on or about the 3d August 1844, when he met, at the cars, *Mr. Larimer*, to whom he had passed them, and who then, for the first time, told him said three notes were counterfeit; that upon receiving this information, said witness referred said *Larimer* to the plaintiff, as the person from whom said witness had received said notes, and that on that day, the plaintiff paid said *Larimer* the amount which he had paid for said three notes, and took said three notes.

The plaintiff further offered in evidence, by *Upton Buck*, that the plaintiff never had in his possession any notes of the *Planter's Bank of Tennessee*, of, &c., nor any notes purporting to be notes of that bank, of, &c., except the five notes which he passed to said *Husbands*, as aforesaid; and that the two notes, marked A and B, hereinbefore inserted, are the two notes which said *Husbands* returned to said plaintiff, upon his return from *P.*, as aforesaid, and the same notes with reference to which the affidavits thereto annexed were made.

And the plaintiff further offered in evidence the deposition of *William T. Sprigg*, who proved the notes counterfeit, and *Doyle's* admission, that if they were the same notes he sold plaintiff, and counterfeit, he would have to pay them.

The plaintiff further offered in evidence a commission, and testimony taken under it in *Pittsburg*, for the purpose of identifying the notes in controversy, which the proof tended to do.

The defendant prayed the court to instruct the jury as follows :

1st. That in order to find for the plaintiff in this case, they must believe from the evidence in the cause, that the money paid by the plaintiff on the purchase of said notes, was received by the defendant, or some person for him, in that behalf duly authorised.

2d. That if they shall find, that the plaintiff is an exchange broker of established character, as such as a person of experience and skill in said business, and a competent judge of bank notes, as to their genuineness; and shall also find in the cause, that a competent judge of bank notes, by the exercise of ordinary care in the examination and inspection of said notes, at the time they were offered for sale to the plaintiff, could and would have detected them as counterfeits, and that the plaintiff himself, or his said clerk, *Upton Buck*, by the exercise of ordinary care and prudence in the examination and inspection of said notes, at the time they were so offered to the plaintiff, could and would, have detected them as counterfeit; and shall further find, that said notes were so received by the plaintiff at the time they were so offered, without the exercise of ordinary care, in the examination and inspection of said notes, on the part of the person receiving the same, and without the application of the actual skill and experience of the said plaintiff, or of his said clerk, in the examination and inspection of the same; and shall further find, that the plaintiff and his said clerk had full opportunity to examine and inspect the same, before said notes were handed to the witness, *Mr. Husbands*, and that they neglected to make such inspection and examination as aforesaid; and shall also find from the evidence in the cause, that the person who offered said notes for sale, and also that the defendant, acted *bona fide*, without knowledge or suspicion, and without any grounds to believe or suspect, that said notes were otherwise than genuine, then the plaintiff is not entitled to recover.

3d. That if they shall find the several facts set forth in the defendant's second prayer, as the hypothesis of that prayer; and shall also find, that the plaintiff's business principally consists in buying and selling bank notes, of the issues of foreign banks; and shall also find from the evidence in the cause, that the said notes offered in evidence, were offered for sale to the plaintiff, in the usual course of business, at his counter; and shall further find from the evidence in the cause, that the omission to detect said notes as counterfeit, at the time they were received, and afterwards, whilst they remained in the

possession of the plaintiff, before their delivery to the witness, *Mr. Husbands*, and at the time of their delivery to *Mr. H.*, was the result of negligence on the part of the said plaintiff and of his said clerk, then the plaintiff is not entitled to recover in this case.

4th. That even if they shall find from the evidence in the cause, that the person who presented said notes at the counter of the plaintiff, was a lad at that time, in the service of the defendant, as a clerk in his business; and shall also find from the evidence, that they were presented by said lad, at about half-past eight o'clock in the morning, with a statement, that *Mr. Doyle*, the defendant, desired them to be discounted for a person who was about to leave in the 9 o'clock cars of that day; but shall also find, that the business of the defendant is that of a vendor of lottery tickets, in conjunction with the business of an exchange broker, and that his office and place of business is in *Pratt* street, then the acts and declarations of said clerk of the defendant, are not sufficient, *per se*, to shew that he was authorised by the defendant, *quo ad*, the sale of said notes, to act on his behalf, and that unless the jury shall find from the evidence in the cause, proof of antecedent authority, or subsequent ratification on the part of the defendant, it is not to be presumed merely from the relation subsisting between his said clerk and the defendant, that the said clerk had authority in this particular transaction to act on behalf of the defendant in the sale of the said notes, or in the receipt from the plaintiff of the price thereof.

5th. If the jury shall find the facts set forth in the preceding prayers, as the hypotheses respectively of said prayers; and shall also find from the evidence in the cause, that said notes, after they had been so received by said plaintiff, were by him retained for several days in his possession, and then delivered to the witness, *Mr. Husbands*, under the terms and provisions of the special agreement, proved by said *Husbands* in his evidence; and shall further find from the evidence in the cause, that the said notes were received by said *Husbands*, without the exercise of ordinary care on his part in the examination and inspection of said notes, from his confidence in the judg-

ment, experience, circumspection and care of the said plaintiff in business; and shall further find, that said *Husbands* then was a person of skill and judgment in the knowledge of the character of bank notes, and that by the exercise of this actual skill and knowledge which he possessed, he could and would, with ordinary care and circumspection, have detected these notes as counterfeit; and shall further find from the evidence in the cause, that said *Husbands* carried said notes with him to *Pittsburg*, and there disposed of three of said notes to a clerk of a certain *W. Larimer*, in *Pittsburg*, on the 28th day of May 1844, without the exercise of ordinary care at the time they were so passed away, either by said *Husbands*, or said clerk of said *Larimer*, in the examination and inspection of said three notes; and shall further find from the evidence, that said *Larimer* kept an exchange office in *Pittsburg*, and that his said clerk there was a good judge of the genuineness of the notes of the particular bank of which said three notes purported to be the issue, and that said notes were so passed by said *Husbands*, in the usual course of business, and that said clerk received the same, without the exercise of ordinary care in the examination and inspection of the same, from his confidence, in his opinion, of the skill and care of *Mr. Husbands*, from whom he received them; and shall further find from the evidence, that the said *Husbands*, and said clerk of said *Larimer*, by the exercise of ordinary care and circumspection, at the time said notes were passed to said clerk by said *Husbands*, or by the exercise of the actual skill and care of either, could and would, have detected said notes as counterfeit; and shall further find from the evidence in the cause, that said three notes were not returned by said *Larimer*, or his said clerk, or by said *Husbands*, to the said plaintiff, until the 3d day of August 1844, and were not tendered to the said defendant to be returned to him, until after the same were so returned to the plaintiff; and shall further find from the evidence in the cause, that the said *Husbands* had returned from *Pittsburg* to *Baltimore*, as early as the 3d day of June 1844, and that said plaintiff and said *Husbands* then knew or believed, or had reasonable grounds to suspect and believe, that said notes were counterfeit;

and shall further find from the evidence in the cause, that no communication was made by the said plaintiff, or said *Husbands*, to said *Larimer*, or his said clerk, or by said *Larimer*, or his said clerk, to said plaintiff, or said *Husbands*, in relation to said three notes, until the latter end of the month of July 1844, then the plaintiff is not entitled to recover in this case, in respect of said three notes so passed by said *Husbands* to said clerk of said *Larimer*.

The court, (PURVIANCE and LE GRAND, A. J.,) rejected the 2nd and 3rd, and granted the 1st, 4th, and 5th prayers of the defendant; to the granting of the 5th prayer of the defendant, the plaintiff excepted.

The plaintiff having recovered less than his demand under the directions of the court, as given to the jury, prosecuted the present appeal.

The cause was argued before CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By TEACKLE for the appellant, and
By WILLIAM SCHLEY for the appellee.

MAGRUDER, J., delivered the opinion of this court.

This action was brought in *Baltimore* county court, by the appellant, to recover back from the defendant money paid by him for bank notes, which proved to be counterfeits. These notes, it is to be taken for granted, were counterfeit, and were received by the plaintiff of the defendant, in exchange for other money which was good.

The notes were received by the plaintiff on the 24th May 1844, and a few days afterwards, were passed away to one *Husbands*, who went to *Pittsburg*, and there sold three of said notes to one *Larimer*. *Husbands*, upon his return, brought with him, and delivered to the plaintiff, the other two. Whether, upon the latter, a recovery can be had, is not a question before us. The amount of them was recovered, and it is only to be enquired now, whether the plaintiff is entitled to recover of the defendant the money which he paid for the other three. These were offered to defendant on the 3rd of August.

On the part of the defendant it is insisted, that the maxim, *caveat emptor*, applies to this case, and that the plaintiff cannot recover, because, by the exercise of due diligence, he might have discovered that the notes were counterfeit. The court is not of this opinion. The defendant, as well as the plaintiff, was a broker, equally skilled in the business of detecting counterfeit notes, and cannot rely on such a defence. It would appear, that the plaintiff might have relied, and the usage among brokers authorised him to rely, upon the skill which the defendant possessed in detecting counterfeits. The parties must be considered as equally innocent; their knowledge and their means of knowledge were the same. If, then, it had been discovered, that these notes were counterfeit, and had been returned immediately after they were received, the plaintiff's right to recover in this suit the amount paid for them, could not be questioned.

The enquiry then is, whether, by reason of any laches on his part, the plaintiff has lost his right to recover in this case? We are not informed, what became of these notes after they were passed away by *Husbands* to *Larimer*, and until the return of them to the plaintiff, something more than two months after *Husbands* parted with the possession of them. There is no ground for a presumption, that they were within the reach of the plaintiff, before the return of them to him. It cannot, therefore, be said, that he was guilty of any laches, which would furnish the defendant with a valid defence. The latter undertook to furnish the plaintiff with notes of the *Planter's Bank of Tennessee*, and received therefor a valuable consideration. The paper which he furnished, was not what he undertook it to be, and was of no value. Surely, then, upon every principle of equity, he is bound to refund, unless he can show, (and in this he has failed,) laches on the part of the plaintiff. If the case was *res nova*, we could not assent to the opinion of the court below.

The case of *Key vs. Knott and wife*, 9 *Gill and Johnson*, 342, and that of *Jones and others, vs. Ryde and another*, and some of the decisions, to which a reference is given in the report of those cases, seem to be at war with the decision of the court below.

There is in the case proof, that with respect to the two bank notes, returned by *Husbands*, and after the return of them to the plaintiff, he expressed apprehension in regard to them, and demanded the money for them of the defendant. This proof, as set forth in the record, it is thought, weakens the claim of the plaintiff to recover the sum which he claims for the three notes, which are now the subject of controversy. But this, it would seem, is requiring too much of the plaintiff, and is too favorable to the defendant. He was, according to the proof, quite as able as the plaintiff, to judge whether the notes were genuine or otherwise. He put them into circulation, received full value for them, and was quite as likely as the plaintiff, to know from whom he obtained them, and if the three notes were not received by him, at the same time, and from the same person, that the other two were. There is no proof, that the plaintiff withheld from him any information, which he himself possessed, and whatever might have been the law of the case, if the defendant had possessed less skill than the plaintiff, in detecting counterfeit paper, yet, in this case, between brokers, the defendant cannot complain, that the plaintiff is the person who ought to suffer, unless, indeed, other proof can be offered.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.